IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL WILLAMS AND<br>MARCO WILLIAMS<br>d/b/a FIRST CHOICE VIDEO,<br><br>Plaintiffs,<br><br>v.<br><br>MGA, INC. and all Holding Companies<br>and affiliated Entities, d/b/a MOVIE<br>GALLERY, UNITED PARCEL SERVICE,<br>INC. (UPS), SELECT MEDIA SERVICES, LLC,<br>MILE HIGH MEDIA, INC., LFP, INC.,<br>DIGITAL SIN, INC., and FRASERSIDE<br>HOLDING, LTD,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 1:07-CV-228-MEF |

## BRIEF IN SUPPORT OF DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION TO DISMISS

This case marks the seventh frivolous RICO conspiracy lawsuit that Plaintiffs' counsel

has filed in this Circuit since 2005 based on essentially identical allegations.[1]  All of these cases

were either dismissed voluntarily by Plaintiffs' counsel or were dismissed by the district courts,

and, of the dismissals that Plaintiffs' counsel has appealed, all have been affirmed by the United

States Court of Appeals for the Eleventh Circuit.[2]

---

[1] *See Carter v. MGA, Inc.*, No. 2:05-CV-1662-WMA (N.D. Ala.); *Clark v. MGA, Inc.*, No. 2:05-CV-208-WMA (N.D. Ala.) ("*Clark I*"); *Clark v. MGA, Inc.*, No. 2:05-CV-633-SLB (N.D. Ala.) ("*Clark II*"); *Odom v. MGA, Inc.*, No. 1:05-CV-59-MEF-DRB (M.D. Ala.); *Whitaker v. MGA, Inc.*, No. 1:05-CV-99 (WLS) (M.D. Ga.); and *Holland v. MGA, Inc.*, No. 1:05-CV-237-WKW (M.D. Ala.).

[2] *See Carter v. MGA, Inc.*, No. 05-15402, 2006 WL 1933788, at *1 (11th Cir. July 13, 2006) (unpublished opinion) (petition for rehearing en banc denied), *cert. denied*, No. 06-1062, 2007 WL321165 (U.S. Apr. 16, 2007); *Clark v. MGA, Inc.*, No. 06-12857, 2006 WL 3422345, at *1 (11th Cir. Nov. 29, 2006) (unpublished opinion) (affirmed on

Case 1:07-cv-00228-MEF-CSC     Document 23     Filed 04/30/2007     Page 2 of 23

Just as in the preceding six cases filed by Plaintiffs' counsel, the allegations in the instant case are insufficient to state a claim, and the Complaint should be dismissed. To this point, district courts are required to scrutinize carefully civil RICO complaints at the motion to dismiss stage to thwart, as early as possible, abuses by civil RICO plaintiffs who bring frivolous claims. *See Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1332 (11th Cir. 1998); *Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 44 (1st Cir. 1991) (noting that because a civil RICO claim is "an unusually potent weapon — the litigation equivalent of a thermonuclear device . . . to avert dismissal under Rule 12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged"). Plaintiffs' nine-page Complaint, which seeks $30 million in damages, fails to allege facts sufficient to state a cause of action under RICO and is a frivolous suit that should be dismissed.

## I.    MOTION TO DISMISS STANDARD

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are to be granted when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). In evaluating such a motion to dismiss, the Court is to accept the plaintiff's allegations as true and to construe the Complaint in the light most favorable to the plaintiff. *Murphy v. Fed. Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir. 2000).

---

res judicata grounds); *Whitaker v. MGA, Inc.*, No. 06-15025, 2007 WL 763977, at *1 (11th Cir. Mar. 15, 2007) (unpublished opinion); and *Holland v. MGA, Inc.* No. 06-16187, 2007 WL 951449, at *1 (11th Cir. Mar. 30, 2007) (unpublished opinion).

- 2 -

Even though a complaint is construed in favor of the plaintiff, it nevertheless must allege the <u>facts</u> on which the claims are based to survive a motion to dismiss. "Conclusory allegations 'will not survive a motion to dismiss if not supported by the facts constituting a legitimate claim for relief.'" *Lombards, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985); *see also Halliburton Co. v. Norton Drilling Co.*, 302 F.2d 431, 435 (5th Cir. 1962) ("[A] naked conclusion of law, unsupported by the factual allegations of the complaint . . . need be given no weight in determining the sufficiency of the complaint.").[3] Thus, "[d]espite the liberality of modern rules of pleading, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *French Quarter Apartments, Ltd. v. Georgia-Pacific Corp. (In re Plywood Antitrust Litig.)*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981). As explained herein, Plaintiffs' skeletal Complaint against UPS should be dismissed because it does not even come close to meeting these most basic requirements.

## II.    FACTUAL BACKGROUND

In short, there are no "factual" allegations against UPS in this 13-paragraph Complaint. There are unsupported conclusions of law, but the who, what, when, where, why and how of the alleged RICO conspiracy are conspicuously absent. Significantly, there is not even an allegation of any meetings or agreements among UPS and co-defendants. Insinuation and suggestion cannot replace factual allegations.

Plaintiffs allege that Defendants knowingly combined and confederated together to disseminate and distribute obscene material through interstate commerce for profit via common

---

[3] Decisions of the Fifth Circuit decided prior to October 1, 1981, are binding within the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

carrier in violation of RICO. Plaintiffs contend that Defendants conspired to import obscene and pornographic videos, DVDs, and magazines into Alabama and Mississippi for sale and distribution. As in each of the previous RICO cases against these Defendants, Plaintiffs' theory appears to be that UPS participated in an anti-competitive scheme in which Movie Gallery, a movie rental chain, could under-price Plaintiffs in the sale of non-sexually explicit materials due to Movie Gallery's ability to sell sexually explicit material at a premium. Plaintiffs allege that, as a result of this alleged anti-competitive scheme, they could not compete with Movie Gallery because Movie Gallery was able to sell the same products that Plaintiffs were attempting to sell at a lower price to consumers. Plaintiffs' conclusory allegation against Defendant UPS is that UPS knew that it was engaged in the illegal transportation of obscenity by virtue of one thing, and one thing only — the names of three companies that it allegedly provided transportation services to in California, Pleasure Productions, Digital Sin, and Mile High Media, Inc. [Complaint at ¶ 9].

### III.    ARGUMENT AND CITATION OF AUTHORITIES

The civil provisions of federal RICO provide for a private right of action, but only if a defendant injures a person in his business or property as a result of a violation of one of the provisions of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c). Thus, to establish the requisite elements of any civil RICO claim, a plaintiff must, among other things, prove: "(1) a violation of section 1962; (2) injury to business or property; and (3) that the violation caused the injury." *O'Malley v. O'Neill*, 887 F.2d 1557, 1561 (11th Cir. 1989); *see also Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992) (holding that RICO plaintiff must prove that § 1962

violation proximately caused it injury). As outlined herein, Plaintiffs fail to state a RICO claim

against UPS for several independent reasons, including:

* Plaintiffs fail to allege any facts, much less legally-sufficient ones, sufficient to establish a RICO conspiracy claim against UPS.

* Plaintiffs do not sufficiently allege a RICO enterprise.

* Plaintiffs do not sufficiently allege any predicate act violations by UPS.

* Plaintiffs do not sufficiently allege a pattern of racketeering activity.

* Plaintiffs do not sufficiently allege that any act or omission by UPS is the proximate cause of their alleged injuries.

* Plaintiffs' claims for injunctive relief are barred as a matter of law, because RICO injunctive relief is not available to private citizens bringing civil RICO claims.

* Plaintiffs' claims against UPS are preempted by the Carmack Amendment to the Interstate Commerce Act, which established a wide-ranging and all-encompassing federal framework governing liability of carriers such as UPS.

* Plaintiffs have no private right of action to enforce federal obscenity law.[4]

**A.     Plaintiffs fail to state a claim against UPS for a RICO conspiracy.**

Section 1962(d) of Title 18 prohibits a person from conspiring with another to violate

subsections (a), (b), or (c) of that section. 18 U.S.C. 1962(d). But a plaintiff bringing such a

claim must do more than merely allege a conspiracy exists. *See Republic of Panama v. BCCI*

*Holdings (Luxembourg), S.A.*, 119 F.3d 935, 950 (11th Cir. 1997) (affirming Rule 12(b)(6)

dismissal of RICO conspiracy claims because the complaint did not allege sufficient facts to

---

[4] Additionally, Plaintiffs are not properly before this Court because they fail to invoke the jurisdiction of this Court pursuant to a civil jurisdiction statute. [Complaint at ¶ 2].

show that there was an agreement to engage in the scheme or to commit two predicate acts);

*O'Malley v. O'Neill,* 887 F.2d 1557, 1560 (11th Cir. 1989) (affirming dismissal of RICO

conspiracy claim because "no facts [were] alleged that would indicate that [defendants] were

willing participants in a conspiracy"); *Davidson v. Wilson,* 763 F. Supp. 1470, 1472 n.3 (D.

Minn. 1991) (alleging mere affiliation between corporate defendants is insufficient to establish

agreement under § 1962(d)), *aff'd,* 973 F.2d 1391 (8th Cir. 1992).

Here, the "facts" purportedly supporting Plaintiffs' RICO conspiracy claim are not facts

at all, but rather a legal conclusion:

> These Defendants did knowingly combine and confederate together with each
> other and others on thousands of dates before the filing of this Complaint as
> evidenced by their communications, to disseminate and distribute hard-core,
> obscene videotapes/DVDs and magazines through interstate commerce
> throughout the United States and Canada via common carrier, to profit and obtain
> benefits therefrom, and in violation of 18 U.S.C. Section 1462(c)-(d) also known
> as the Racketeer Influenced and Corrupt Organizations Act, or "RICO."

[Complaint at ¶ 12]. As in *BCCI Holdings,* here the Complaint merely alleges a conspiracy

exists.

Plaintiffs simply allege that Mile High Media, Inc., LFP, Inc., Digital Sin, Inc., and

Fraserside Holding, LTD placed obscene videotapes/DVDs with UPS for delivery to Defendant

MGA, Inc. [Complaint at ¶ 11]. There is a complete failure to allege that UPS was a willing

participant in any alleged conspiracy or to allege any facts outlining who at UPS made the

allegedly conspiratorial agreement, with whom this alleged agreement was made, or where,

when and how it was made. All of those detailed factual allegations are required to state a RICO

conspiracy claim against UPS, and none appear in Plaintiffs' Complaint. Civil RICO conspiracy

claims are properly subject to dismissal under Rule 12(b)(6) for failure to allege any facts

substantiating where, when and by whom the alleged conspiratorial agreement was made. *See Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999) (affirming Rule 12(b)(6) dismissal of civil RICO conspiracy claims).

> A conspiracy is an agreement and there is no indication of when an agreement between Weiser and the other defendants was formed, what its terms were except that they somehow included a search of the premises occupied by the plaintiffs, or what Weiser's role was in the October 23 incident since he didn't participate in the search that day. The form and scope of the conspiracy are thus almost entirely unknown. This is a case of a bare allegation of conspiracy, and such an allegation does not satisfy Rule 8.

*Id.*

As in *Ryan*, dismissal of any RICO conspiracy claims against UPS is warranted.

**B.     Dismissal is warranted because Plaintiffs do not adequately allege the existence of a RICO enterprise.**

In addition to Plaintiffs' failure to adequately allege conspiratorial conduct, they fail to allege that such conduct was aimed at participating in an enterprise to commit racketeering activity in violation of Section 1962(c), which is fatal to their Complaint. Section 1962(c) provides that it is unlawful "'to conduct or participate, directly or indirectly, in the conduct of [an] enterprise [that affects interstate commerce] through a pattern of racketeering activity.'" *BCCI Holdings*, 119 F.3d at 948 (quoting 18 U.S.C. § 1962(c)) (alteration in original). The following must be shown in order to establish a RICO enterprise: (1) that the enterprise consists of "a group of persons associated together for a common purpose of engaging in a course of conduct;" (2) that there is "evidence of an ongoing organization, formal or informal;" (3) that there is "evidence that the various associates function as a continuing unit;" *United States v. Turkette*, 452 U.S. 576, 583 (1981); and (4) that the defendant is separate and distinct from

(instead of identical to) the purported enterprise. *United States v. Goldin Indus., Inc.*, 219 F.3d 1268, 1270 (11th Cir. 2000). Finally, Plaintiffs must show that a party participated in the operation or management of the enterprise to establish liability under 18 U.S.C. § 1962(c). *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Here, Plaintiffs fail to allege facts sufficient to establish these elements. *See James v. Meow Media, Inc.,* 90 F. Supp. 2d 798, 813 (W.D. Ky. 2000) (dismissing a plaintiff's RICO claims on a Rule 12(b)(6) motion for failure to properly allege facts to support the existence of a RICO enterprise), *aff'd*, 300 F.3d 683 (6th Cir. 2002).

**1.    No group of persons associated together for a common purpose of engaging in a course of conduct.**

Plaintiffs do not adequately allege that UPS and any of the named co-defendants associated together for a common purpose for engaging in a course of conduct. Plaintiffs provide no details as to any claimed association for a common purpose.

**2.    No ongoing organization.**

Nor do Plaintiffs adequately allege that an ongoing organization existed among the defendants. Their Complaint fails to allege facts sufficient to support this element.

**3.    No functioning as a continuing unit.**

Plaintiffs do not adequately allege that the defendants functioned as a continuing unit. No details of such an alleged unit are offered, nor are any facts offered to establish its functioning on a continuing basis.

**4.    No distinction between the defendants and the enterprise.**

Plaintiffs fail to adequately allege the required distinctiveness between the defendants and the enterprise. *Goldin*, 219 F.3d at 1275 ("Thus, to the extent that a defendant is both the 'person' and the 'enterprise,' a conviction of that defendant under § 1962(c) now cannot stand.")

Plaintiffs allege that all the defendants are both the enterprise and the RICO defendants, which is impermissible and leads to a dismissal. The Complaint states: "Plaintiffs aver that these Defendants conspired to transport obscene material into Mississippi and across the United States and Canada for commercial sale, and operated an enterprise for that purpose in order to make money." [Complaint at ¶ 1]. As the court held in *James* when dismissing RICO claims because, as in this case, the same companies were alleged to be both the RICO defendants and the enterprise, "[t]he fundamental flaw with this interpretation of the pleadings is that if the Court accepts that Plaintiffs intended for the named companies to be the enterprise, then the named companies cannot also be the named RICO defendants." *James*, 90 F. Supp. 2d at 813.

     **5.**    **No participation in the management of any purported RICO enterprise.**

     Finally, Plaintiffs fail to adequately allege that UPS participated in the management of any purported enterprise. *Reves*, 507 U.S. at 185. "[O]ne is not liable under [18 U.S.C. § 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Id.* at 183. Further, "liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* at 185. To the contrary, the Complaint here alleges that UPS conducted its *own* business – the transportation and delivery of packages. [Complaint at ¶ 11]. The Complaint completely fails to allege that UPS conducted or participated in the management and control of a separate RICO enterprise. As a result of these pleading deficiencies concerning the existence of a RICO enterprise, Plaintiffs' Complaint must be dismissed.

C.    **Plaintiffs do not adequately allege that UPS committed two predicate acts.**

"The 'pattern of racketeering activity' element requires that a civil RICO plaintiff establish 'at least two acts of racketeering activity[,]' 18 U.S.C. § 1961(5)[,]" which are defined as any violation of the criminal statutes listed in 18 U.S.C. § 1961(1). *BCCI Holdings*, 119 F.3d at 948. Violations of five specific federal obscenity statutes, 18 U.S.C. §§ 1461-65, can serve as predicate acts, *see* 18 U.S.C. § 1961, and Plaintiffs mention three federal obscenity statutes in their Complaint — 18 U.S.C. §§ 1462, 1465 and 1466 – as potential predicate acts upon which their claim is based. Plaintiffs cannot state a claim based on these allegations to form the basis of the requisite two predicate acts to establish a civil RICO violation, and therefore Plaintiffs' Complaint should be dismissed.

First, section 1466 is not listed in 18 U.S.C. § 1961 as a possible predicate act violation, so any attempted reliance by Plaintiffs on this statute in this case is barred as a matter of law.

Second, section 1462 applies only to any persons who "knowingly use[] any express company or other common carrier or interactive computer service . . . for carriage in interstate or foreign commerce" of obscene materials. 18 U.S.C. § 1462. This statute is only directed to those who use a common carrier, not the common carrier itself, and therefore cannot constitute a predicate act by UPS.

Third, section 1465 only applies to "[w]hoever knowingly transports or travels in, or uses a facility or means of, interstate or foreign commerce . . . for the purpose of sale or distribution of any obscene . . . matter of indecent or immoral character. . . ." 18 U.S.C. § 1465. The allegations in the Complaint are insufficient to establish that UPS "knowingly" transported any allegedly obscene matter. Plaintiffs make a conclusory "allegation" of UPS's scienter — that

UPS knew that it was transporting allegedly obscene matter merely because it knew the names of three businesses in California. Conclusory allegations of intent are insufficient, as a matter of law, to support a RICO claim. *BCCI Holdings*, 119 F.3d at 949 (noting that "[a] RICO plaintiff's allegations of scienter cannot be 'merely conclusory and unsupported by any factual allegations'"). In *BCCI Holdings*, a similar allegation was made that the defendant's president "knew or should have known" that the defendant was illegally controlled by a co-defendant. The Eleventh Circuit held that such an allegation was not sufficient to withstand a motion to dismiss plaintiff's RICO action. *Id.* at 950. Here, no inference of the requisite scienter can be shown, and the Complaint should be dismissed.[5]

### D. Plaintiffs do not adequately allege a pattern of racketeering activity on the part of UPS.

To properly plead a pattern of racketeering activity, a plaintiff must allege facts sufficient to show that a defendant committed at least two racketeering acts that are related, and that the acts amount to, or threaten the likelihood of, continued criminal activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989); *see also Aldridge v. Lily-Tulip, Inc. Salary Retirement Plan Benefits Comm.*, 953 F.2d 587, 593 (11th Cir. 1992). There are only two ways that a RICO plaintiff can prove criminal continuity: (1) by proving that the defendant committed a series of related predicate acts extending over a substantial period of time; *Northwestern Bell*, 492 U.S. at 242; *see also Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1266 (11th Cir. 2004) (holding that the plaintiffs failed to establish a series of related predicate acts when the plaintiffs

---

[5] Apparently in response to the Eleventh Circuit's opinion in *Carter*, which held in part that the plaintiffs' conclusory statements that the purported subject materials were obscene was insufficient to withstand a motion to dismiss, 2006 WL 1933788, at *1, Plaintiffs' counsel has included descriptions of certain movies in the instant Complaint. [Complaint at ¶ 8]. Even assuming Plaintiffs' claims of obscenity are sufficiently alleged, which UPS does not concede, these allegations have no bearing on UPS's arguments here, all of which are independent bases for dismissal of the action.

alleged that the defendants had committed mail and wire fraud violations that "extended 'over a substantial period of time'" and only alleged specific incidents beginning in April 1997 and ending, at the latest, in January 1998); or (2) by showing that the defendant committed related predicate acts involving a distinct threat of long-term racketeering activity. *Northwestern Bell*, 492 U.S. at 242; *see also Jackson*, 372 F.3d at 1268 (affirming Rule 12(b)(6) dismissal of RICO claims for failure to establish pattern of racketeering activity because plaintiffs had not established that alleged incidents of mail and wire fraud "pose[d] a threat of continued criminal activity in the future" when they "offer[ed] no support for this general and conclusory allegation") (internal quotation marks omitted).

Here, as discussed in Part C, *supra*, Plaintiffs do not sufficiently allege the required predicate acts much less a pattern of racketeering activity. Plaintiffs have failed to allege the required two racketeering acts of UPS with particularity. Simply alleging, as Plaintiffs do here in a most conclusory fashion, that Defendants transported shipments for movie producers on two dates less than a month apart from each other and "did knowingly combine and confederate together with each other and others on thousands of dates prior to the filing of this Complaint" [Complaint at ¶¶ 12-13] is woefully inadequate. Dismissal is warranted.

### E.    Plaintiffs do not adequately allege proximate causation.

The United States Supreme Court has held that the requirement of an injury "by reason of" a RICO violation is a standing requirement under 18 U.S.C. § 1964(c). According to the Supreme Court, a plaintiff must demonstrate "harm caused by [the] predicate acts" that form the alleged pattern of racketeering activity, and a plaintiff's recoverable damages must "flow from the commission of the predicate acts." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985).

The predicate acts must be the "proximate cause" of the plaintiff's injury. *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 268 (1992).

In the Eleventh Circuit, direct causation is required to satisfy this standing requirement. *Pelletier v. Zweifel*, 921 F.2d 1465, 1499-1500 (11th Cir. 1991) (only damages directly caused by predicate acts may be recovered under RICO, and plaintiffs must have been the targets of the RICO violations). "But for" causation alone is too "tenuous a relation between the harm and the predicate acts [to be] sufficient to confer standing. RICO does not provide a remedy for every injury that may be traced to a predicate act." *O'Malley*, 887 F.2d at 1561 (citation omitted).

The Supreme Court recently reaffirmed that proximate causation for purposes of 18 U.S.C. § 1964(c) requires "'some direct relation between the injury asserted and the injurious conduct alleged.'" *Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991, 1993 (2006) (quoting *Holmes*, 503 U.S. at 268). In *Anza*, the plaintiff sued its principal business competitor alleging that the competitor failed to charge state sales tax to cash-paying customers, which allowed it to reduce prices without affecting its profit margin, and that it submitted fraudulent state tax returns to conceal the conduct, which allegedly involved the racketeering activities of mail and wire fraud. *Id.* at 1994-95. The plaintiff claimed that the competitor's submission of fraudulent tax returns constituted a violation of 18 U.S.C. § 1962(c) and claimed damages under 18 U.S.C. § 1964(c) for the decreased profits and lost market share that the plaintiff allegedly suffered as a result of the competitor's ability to under-price the plaintiff. *Id.*

The Court rejected the plaintiff's argument and held that the relationship between the plaintiff's alleged injuries and the alleged RICO violation was too attenuated to support a civil RICO claim, stating: "[t]he cause of Ideal's asserted harms . . . is a set of actions (offering lower

prices) entirely distinct from the alleged RICO violation (defrauding the State)." *Id.* at 1997.

"[A] RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that

the defendant's aim was to increase market share at a competitor's expense." *Id.* at 1998. In

reversing the decision of the Second Circuit, which allowed the plaintiff's claim to proceed, the

Court held: "When a court evaluates a RICO claim for proximate causation, the central question

it must ask is whether the alleged violation led directly to the plaintiff's injuries. In the instant

case, the answer is no." *Id.*

    Here, the absence of allegations sufficient to support a direct causal nexus between the

alleged obscenity violations and Plaintiffs' alleged injuries requires that the Complaint be

dismissed. As explained in Part D, *supra*, Plaintiffs fail to adequately allege a predicate act by

UPS. Plaintiffs' Complaint does not allege with any specificity how they have been injured, thus

underscoring how remote any alleged injury is from any alleged predicate act of UPS. Plaintiffs'

attempt to link UPS to the names of three businesses in California with Plaintiffs' alleged

injuries in Mississippi, without any supporting factual detail, does not rise to the level of

pleading concerning direct proximate causation required in this Circuit. And, there certainly is

no allegation in the Complaint that UPS directly targeted Plaintiffs. Such an allegation of direct

targeting is mandatory. *See Pelletier*, 921 F.2d at 1499-1500. Any reliance on the extrapolation

of an allegation of a remote and indirect link, at best, between the alleged predicate act and the

alleged injury is clearly not sufficient to meet RICO's stringent requirement of direct causation

flowing from criminal acts directed at a plaintiff.

**F.    Plaintiffs' claims for injunctive relief pursuant to civil RICO are barred as a matter of law.**

Further, the requested injunctive relief is not available to private plaintiffs bringing civil RICO claims, and thus does not state a proper claim. *Religious Tech. Ctr. v. Wollerscheim*, 796 F.2d 1076, 1088 (9th Cir. 1986) ("[W]e conclude that Congress did not intend to give private RICO plaintiffs any right to injunctive relief.")  Accordingly, all of Plaintiffs' claims for injunctive relief in this action should be dismissed as a matter of law.

**G.    Plaintiffs' claims against UPS are preempted by the Carmack Amendment to the Interstate Commerce Act.**

The only allegations in the Complaint that address UPS involve UPS's alleged provision of services to transport goods to and from the other defendants; Plaintiffs allege that UPS should have recognized that by the names of the shippers that the packages contained alleged obscenity and should have prevented their delivery.  [Complaint at ¶ 9].  Because the claims arise from UPS's provision of delivery services, Plaintiffs' sole avenue of recovery (if any) is pursuant to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, which exclusively governs a motor carrier's liability and a shipper's remedies arising from a carrier's obligations related to the transportation and delivery of property.[6]  Through the Carmack Amendment, Congress established the exclusive remedy for claims concerning a motor carrier's transportation and delivery services.

---

[6] The Carmack Amendment governs transportation of property by motor carriage; when property is transported by air carriage, it is governed by federal common law that is informed by the same policies and applies the same principles as the Carmack Amendment. *See, e.g., Read-Rite Corp. v. Burlington Air Express, Ltd.,* 186 F.3d 1190, 1195-96 (9th Cir. 1999) (recognizing role of Carmack Amendment in development of federal common law governing liability of air carriers); *First Pa. Bank, N.A. v. E. Airlines, Inc.*, 731 F.2d 1113, 1117, 1122 (3d Cir. 1984) (applying "federal common law patterned upon the policy of the Carmack amendment").  Accordingly, to the extent that the packages at issue traveled by air carriage, Plaintiffs' claims are preempted by federal common law for the

The Eleventh Circuit has recognized the broad scope of the Carmack Amendment with respect to a carrier's liability for transportation and delivery, holding: "The Carmack Amendment creates a uniform rule for carrier liability when goods are shipped in interstate commerce." *Smith v. United Parcel Serv.*, 296 F.3d 1244, 1246 (11th Cir. 2002). In *Smith*, the plaintiffs complained that UPS improperly refused to make deliveries to their home, and instead required them to pick up the packages at a UPS office, which caused delays and sometimes resulted in packages being returned to the sender. *Id.* at 1245-46. The Smiths asserted a wide range of state-law claims against UPS, including a tort claim for outrage based on UPS's conduct in denying them deliveries with intent to inflict emotional distress.

The Eleventh Circuit held that, because the Smiths' claims were all based "on UPS's failure to provide them with particular transportation and delivery services," they "f[e]ll squarely within the preemption coverage of the Carmack Amendment." *Id.* at 1247. As the court explained, Carmack "embraces 'all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation.'" *Id.* at 1249 (citation omitted). The court held that even the Smiths' outrage claim, which alleged injury to person, rather than property, fell squarely within the scope of Carmack. *Id.* at 1248-49. The court held that the "*the Carmack Amendment preempts all of the Smiths' claims because the claims arise from conduct involving UPS's transportation and delivery services.*" *Id.* at 1245 (emphasis added); *see also S. Express Co. v. Byers*, 240 U.S. 612, 614-15 (1916) (Carmack Amendment precluded claim for damages for mental anguish resulting from the delayed delivery of a casket); *Ga., Fla. & Ala. Ry. v. Blish*

---

same reason, and to the same extent, that the claims are preempted by the Carmack Amendment if they traveled exclusively by motor carriage.

*Milling Co.*, 241 U.S. 190, 196 (1916) (claims for failure to make deliveries according to instructions preempted by Carmack).

Here, as in *Smith*, Plaintiffs' claims "arise from conduct involving UPS's transportation and delivery services." 296 F.3d at 1245. As a result, as in *Smith*, their claims fall squarely in the scope of the Carmack Amendment.

Courts have held claims, like Plaintiffs', that allege that a carrier should have, but failed to, prevent delivery of certain goods are preempted by Carmack. For example, in *Soly v. United Parcel Serv.*, No. 02-CV-10499 (MEL) 2002 U.S. Dist. LEXIS 24059, at **1-2 (D. Mass. Aug. 22, 2002), the plaintiff sought to hold UPS liable for delivering packages to him that were covered with a white powder after a UPS employee had notified his supervisors. The plaintiff alleged that he feared the packages were contaminated with Anthrax. Citing *Smith*, the court held that the claims were preempted by Carmack "because the claims arose from 'conduct involving UPS's transportation and delivery services.'" *Id.* at *5; *see also Am. Synthetic Rubber Corp. v. Louisville & Nashville R.R.*, 422 F.2d 462, 464-65, 467 (6th Cir. 1970) (claims arising from delivery of wrong chemicals, which were marked with danger signs, were preempted because they were "based upon the breach of, or the negligent performance of, a duty created by an interstate contract of carriage"); *Strike v. Atlas Van Lines, Inc.*, 102 F. Supp. 2d 599, 600-01 (M.D. Pa. 2000) (Carmack preempted claims arising from delivery of goods that were obviously saturated with gasoline).

To the extent that the complaint intends to state a claim for breach of state unfair competition law [Complaint at Section V], any such state law claim is clearly preempted. *See, e.g., Soly*, 2002 U.S. Dist. LEXIS 24059, at *5. Moreover, while typical Carmack Amendment

- 17 -

cases address the preemption of *state* law claims, the same principles regarding Carmack's

expansive scope and exclusive remedy recognized in *Smith* apply with equal force to preclude a

plaintiff from pursuing *federal* law claims that fall within the statute's scope.  For example, in

*Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 379 (5th Cir. 1998), the court

addressed the issue of "whether federal common law remedies are available in actions against

common carriers . . . within the scope of the Carmack Amendment."  The court concluded that

the Carmack Amendment "is the shipper's sole remedy" for claims concerning ground shipments

within its scope and "preempts any common law remedy that increases the carrier's liability"

beyond the remedy provided by Carmack itself.  *Id.* at 382.  Accordingly, the court held that

Carmack preempted federal common law claims arising from the loss of the plaintiffs' property.

*Id.* at 382-83.

Likewise, *Cleveland v. Beltman North American Co., Inc.*, 30 F.3d 373, 377 (2d Cir.

1994), addressed the issue of "whether Congress has broadly occupied the *entire* field of

interstate shipping to the exclusion of any other law and, in particular in this case, federal

common law."  The court held that Carmack's exclusive reach and preemptive effect extended

even to federal law and barred a federal common law claim against a ground carrier for punitive

damages arising from conduct within Carmack's scope.  *Id.* at 379.  The court concluded that a

federal common law claim for breach of implied covenant of good faith and fair dealing seeking

punitive damages "cannot exist alongside the Carmack Amendment" because Carmack has

established the exclusive remedies that Congress deems appropriate.  *Id.*; *see also Gordon v.

United Van Lines*, 130 F.3d 282, 286-87 (7th Cir. 1997) (relying on *Cleveland* to hold that

Carmack Amendment precludes federal common law basis for awarding punitive damages).[7]

Similar holdings were reached in *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 662 (7th

Cir. 1992) (finding the conduct giving rise to the RICO claim preempted by the National Labor

Relations Act) and *Franks v. O'Connor Corp.*, No. 92-0947, 1992 WL 301266, at *3 (E.D. Pa.

Oct. 16, 1992) (stating that the Labor Management Relations Act preempted RICO claims based

on conduct that was unlawful only by virtue of federal labor law).  Accordingly, Plaintiffs'

claims are preempted by the Carmack Amendment and should be dismissed.

### H.    Any state law claim asserted against UPS also would be preempted by the FAAAA.

To the extent that Plaintiffs intend to state a claim against UPS based on state

competition law [Complaint at Section V], any such claim would be preempted by the Federal

Aviation Administration Authorization Act of 1994 ("FAAAA"), which expressly prohibits the

enforcement of state law "related to a price, route, or service" of carriers such as UPS.  49 U.S.C.

§§ 14501(c)(1), 41713(b)(4).  Plaintiffs' claims unquestionably relate to, and indeed are *directly*

*based* on, the core service provided by UPS — the transportation and delivery of packages.  As

other courts have held in dismissing claims against UPS for failing to prevent delivery of

packages, Plaintiffs' claims are preempted because they "go to 'the heart of the "services" that

---

[7] Against the weight of this persuasive authority, an earlier decision from the Fourth Circuit concluded that Carmack did not preclude an award of punitive damages or damages for mental distress under a now-repealed federal statute, 49 U.S.C. § 316, *repealed by* Act of Oct. 17, 1978, Pub. L. No. 95-473, § 4(b), 92 Stat. 1337, 1466, 1468, that prohibited motor carriers from giving undue or unreasonable preference to any person.  *Hubbard v. Allied Van Lines, Inc.*, 540 F.2d 1224, 1226-28 (4th Cir. 1976).  In *Hubbard*, the court concluded that Carmack does not "extinguish[] a carrier's liability for" punitive damages and damages for mental distress unless the carrier limited its liability for such damages "by contract *or by tariff.*"  *Id.* at 1228 (emphasis supplied).  This view of Carmack is squarely at odds with the Eleventh Circuit's opinion in *Smith*, in which the court held that punitive damages and emotional distress damages were *not* available in a claim that fell within Carmack's scope.  For that reason, and for the reasons that the Second, Fifth, and Seventh Circuits declined to follow *Hubbard* when holding that Carmack preempts federal claims that fall within its scope, *Hubbard* should not be followed here.

[UPS] provide[s].'" *Rockwell v. United Parcel Serv., Inc.*, No. 2:99-CV-57, 1999 U.S. Dist. LEXIS 22036, at *7 (D. Vt. July 6, 1999) (alterations in original; citation omitted).

In *Rockwell,* the plaintiff asserted Vermont state-law claims against UPS for delivering a package containing a pipe bomb that injured the plaintiff and killed her son. The court dismissed the plaintiff's various state-law tort claims as preempted by the FAAAA. 1999 U.S. Dist. LEXIS 22036, at *4-10, 13. The *Rockwell* court concluded that "the claims against UPS go to 'the heart of the "services" that [UPS] provide[s].'" *Id.* at *7 (citation omitted). As the *Rockwell* court explained:

> In the context of delivering packages, Ms. Rockwell's complaint regarding UPS's package intake and delivery protocol is, beyond purview, inherently a claim against UPS's services which is also preempted. Tort claims regarding a carrier's shipment of packages "would affect [its] provision of air shipment services" and are thus preempted.

*Id.* at **7-8 (citations omitted; alteration in original). As the court noted, to hold otherwise would subject UPS to "a hodgepodge of state laws which would mandate various obligations upon UPS" to protect the public from potentially dangerous packages — a result that "would necessarily impact directly upon UPS's services and pricing," and was therefore preempted by the FAAAA. *Id.* at **8-9. Likewise here, applying a single state law to determine whether UPS should recognize by the name of a business that its packages contain certain potentially illegal goods, and then placing an obligation on UPS to prevent delivery of those goods, is preempted.

Similarly, in *Soly,* the court held that the FAAAA preempted the plaintiff's claims arising from UPS's delivery of packages that the plaintiff feared were contaminated with Anthrax. 2002

- 20 -

U.S. Dist. LEXIS 24059, at *1-4.  The court dismissed the claims as preempted because "they arise directly from core services provided by UPS."  *Id.* at *3.[8]

Here, as in *Rockwell* and *Soly*, to the extent that Plaintiffs intend to assert a claim under state law, that claim impermissibly would impose state law related to UPS's core package handling and delivery services.  As in *Rockwell* and *Soly*, any such claim is preempted as a matter of law and must be dismissed with prejudice.

I.     **Plaintiffs have no private right of action to enforce federal obscenity statutes.**

Finally, if it is determined that Plaintiffs are attempting to proceed against UPS as private citizens pursuant to Section 1466 or any other federal obscenity statutes, any such claims would be precluded as a matter of law because there is no private right of action to enforce obscenity statutes.  *See Dworkin v. Hustler Magazine, Inc.*, 634 F. Supp. 727, 729 (D. Wyo. 1986); *Ault v. Hustler Magazine, Inc.*, No. 86-381-FR, 1986 WL 20896 (D. Or. Oct. 20, 1986).

## IV.     CONCLUSION

As set forth herein, Plaintiffs' 13-paragraph multi-million dollar RICO Complaint against UPS — based solely on the names of three companies in California — is frivolous and should be dismissed with prejudice pursuant to Rule 12(b)(6).  UPS respectfully submits that, like its sister courts confronted with similar allegations, the Court should grant this motion and put an end to this expensive and wasteful litigation at this early point in the case.

---

[8] Claims alleging unfair competition or practices that relate to prices, routes, or services are regularly preempted by the FAAAA. *See, e.g., W. Parcel Express v. United Parcel Serv. of Am., Inc.*, No. C 96-1526-CAL, 1996 U.S. Dist. LEXIS 18138 (N.D. Cal. Aug. 13, 1996), *aff'd on other grounds*, 190 F.3d 974 (9th Cir. 1999).

Respectfully submitted, this 30th day of April, 2007.

/s/ *Alan C. Livingston*
Alan C. Livingston (LIV007)
LEE and McINISH, P.C.
283 West Main Street
Dothan, Alabama  36301
Phone:      (334) 792-4156
Facsimile:  (334) 794-8342

Betsy P. Collins (COL055)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Phone:      (404) 881-7000
Facsimile:  (404) 881-7777

Attorneys for Defendant
United Parcel Service, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2007, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing

to the following:

Malcolm R. Newman
Malcolm R. Newman, P.C.
P. O. Box 6137
Dothan, AL 36302

Jeffrey M. Grantham
Jeffrey Allen Lee
John T. A. Malatesta, III
Maynard, Cooper & Gale, P.C.
1901 Sixth Avenue North
Birmingham, AL 35203

Robert K. Spotswood
Michael T. Sansbury
Spotswood Sansom & Sansbury LLC
2100 Third Avenue, North
Concord Center, Suite 940
Birmingham, AL 35203

/s/ Alan C. Livingston
Alan C. Livingston (LIV007)
LEE and McINISH, P.C.
283 West Main Street
Dothan, Alabama 36301
Phone:     (334) 792-4156
Facsimile:  (334) 794-8342